# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Samuel Gitau, ) | |
|     Petitioner ) | |
| ) | |
| v. ) | |
| ) | |
| Bruce CHADBOURNE, Field Office Director, ) | Civil Action No. |
| Department of Homeland Security, ) | 05 CV 10803-GAO |
| Immigration & Customs Enforcement; *et. al.* ) | |
|     Respondents ) | |

### PETITIONER'S OPPOSITION AND
### MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO
### RESPONDENTS' MOTION TO DISMISS

#### I. Preliminary Statement

The Petitioner hereby opposes the respondents' Motion to Dismiss. The respondents seek dismissal for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Petitioner is entitled to seek relief in this Court, at this time, by way of Writ of *Habeas Corpus*. Respondent's Motion to Dismiss should be denied.

#### II. Background Facts

The petitioner is a native and citizen of Kenya. He arrived in the United States on or about August 5, 2000 at JFK International Airport in New York City. At that time he was found inadmissible to the United States because he sought entry with a false

passport. He was detained by officers of the then Immigration and Naturalization Service ("INS") now the Department of Homeland Security ("DHS").

Shortly thereafter, the petitioner exhibited symptoms of mental and/or psychological illness. He was sent to Jamaica Hospital in Queens, New York for treatment.

The petitioner underwent a "credible fear" interview by an Asylum Officer of the INS. It was determined that the petitioner had a credible fear of persecution in his homeland. He was subsequently paroled into the United States. Removal proceedings were commenced against the petitioner.

Subsequent to his release in parole status, the petitioner was treated extensively for his mental and/or psychological conditions. He was found to be suffering from Major Depression and Post Traumatic Stress Disorder ("PTSD").

Over the course of several dates, a removal hearing was held. During the hearing, the Immigration Judge ("IJ"), Patricia Sheppard, requested that briefs be filed in the matter concerning whether the petitioner might be barred from receiving a grant of asylum. The specific issue was whether the petitioner is a "person who ordered, incited, assisted, or otherwise participated in the persecution of any person on account of race, religion, nationality, membership in a particular social group, or political opinion" and, if so, is a person who could not be a refugee pursuant to § 101(a)(42) of the Immigration and Nationality Act ("INA"), 8 U.S.C. 1101(a)(42).

The petitioner admits having been a member of the Mungiki sect in Kenya. In fact, the petitioner bases his claim for asylum primarily upon his fear of persecution and torture by this sect. However, the petitioner denies having been a persecutor or having

otherwise engaged in activity that would bar him from receiving asylum in the United States.

The Immigration Court record establishes that the petitioner was interested in the traditional religious practices of his native tribe, the Kikuyu. The Mungiki sect, as purported practitioners of traditional Kikuyu religious beliefs, became a source of interest to the petitioner.

For the short time that the petitioner was with the Mungikis, he was a preacher. The petitioner testified that, during that time, he did believe in the religious tenets of the sect. However, there is no evidence that he believed in any of the persecutorial practices of the sect.

The petitioner testified that he was present at a number of Mungiki initiation ceremonies. The petitioner also testified that he was present when beatings of potential members of the sect took place. The petitioner's testimony is at times confused and ambiguous. However, he testified that he took part in some beatings; it is not clear exactly how many. The petitioner testified that he witnessed some circumcisions of men, but that he did not personally participate in them. He testified that he knew that some female initiates were circumcised by Mungiki women, but that he did not witness any. *At no time did he testify that he threatened to kill anyone.*

The petitioner testified that his participation in the beatings, and/or any initiation activities, was without volition. He stated that he had to do the things that the others in the sect did at the initiations. If he chose otherwise, he would be killed. It was a matter of "self preservation."

3

The petitioner testified that the initiation ceremonies always involved a large group of Mungikis. At times, there were as many as 30 armed Mungikis. He was powerless to act against or to resist the larger group in any way.

The petitioner's testimony and the documents in the Immigration Court record establish that the Mungikis exact high levels of retribution from those who go against or try to leave the group. This includes torture and murder. Even beheadings of defectors have been documented.

After his escape from the group, the petitioner experienced retribution. When the petitioner was captured he was severely beaten. His back was cut and slashed; his fingers were cut and pried back; his foreskin was removed. It appears that they gave him an opportunity to contemplate his torture and to return to the group. He chose not to return.

The petitioner's parents were also abused. The abuse of his parents occurred in an effort to track down the petitioner. The mother has been granted asylum and the father has been recommended for approval. The petitioner was treated for Major Depression and Post Traumatic Stress Disorder immediately upon his arrival in the United States and his treatment continued for several months after he was paroled into the country.

As stated in the petition, when the petitioner's parole was revoked during the course of his hearing; his two year old United States citizen child was left without legal custody, and his business was left unattended.

## I. Jurisdiction

The respondents err in their argument that Section 236(e) of the INA, 8 U.S.C. § 1226(e) bars the petitioner from seeking relief by way of *habeas corpus* from this Court. The Supreme Court has found that detained aliens retain the right to challenge pre-removal

detention by way of *habeas corpus* despite § 1226(e). *See Demore v. Kim*, 123 S.Ct. 1708 (2003). In doing so the Court stated that "where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent." *Id. citing INS v. St. Cyr*, 533 U.S. 289, 308-309, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001). The *Kim* Court noted:

> This Court has held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603, 100 L. Ed. 2d 632, 108 S. Ct. 2047 (1988); *see also Johnson v. Robison*, 415 U.S. 361, 367, 39 L. Ed. 2d 389, 94 S. Ct. 1160 (1974) (holding that provision barring review of "'decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans'" did not bar constitutional challenge (emphasis deleted)). And, where a provision precluding review is claimed to bar habeas review, the Court has required a particularly clear statement that such is Congress' intent. *See INS v. St. Cyr*, 533 U.S. 289, 308-309, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) (holding that title of provision, "Elimination of Custody Review by Habeas Corpus" along with broad statement of intent to preclude review was not sufficient to bar review of habeas corpus petitions); *see also id.*, at 298, 150 L Ed 2d 347, 121 S Ct 2271 (citing cases refusing to find bar to habeas review where there was no specific mention of the Court's authority to hear habeas petitions); *id.*, at 327, 150 L Ed 2d 347, 121 S Ct 2271

The Court went on to state that "Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." *Id.* The Court decided that § 1226(e) did not bar habeas jurisdiction over a constitutional challenge to mandatory detention under § 1226(c).

While this petitioner does in part challenge the respondents' abuse of discretion, the petitioner also raises pure questions of law regarding the process employed by the

5

DHS and of the regulatory framework under which he is held. As such, this Court has *habeas corpus* jurisdiction over the subject matter in this action.

This position is consistent with a long tradition of *habeas corpus* jurisdiction in immigration law concerning matters of detention.

> ...[T]to conclude that the writ is no longer available in this context would represent a departure from historical practice in immigration law. The writ of habeas corpus has always been available to review the legality of executive detention. *See Felker*, 518 U.S., at 663; *Swain v. Pressley*, 430 U.S. at 380, n. 13; id. at 385-386 (Burger, C. J., concurring); *Brown v. Allen*, 344 U.S. at 533 (Jackson, J., concurring in result). Federal courts have been authorized to issue writs of habeas corpus since the enactment of the Judiciary Act of 1789, and § 2241 of the Judicial Code provides that federal judges may grant the writ of habeas corpus on the application of a prisoner held "in custody in violation of the Constitution or laws or treaties of the United States." 25 28 U.S.C. § 2241. Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, that jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context. *See, e.g., In re* {533 U.S. 306} *Kaine*, 55 U.S. 103, 14 HOW 103, 14 L. Ed. 345 (1853); *United States v. Jung Ah Lung*, 124 U.S. 621, 626-632, 31 L. Ed. 591, 8 S. Ct. 663 (1888).
>
> *INS v. St. Cyr*, 533 U.S. 289, 308-309, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001),

The habeas jurisdiction to review detention issues extends to matters of parole, and especially, to the revocation of parole. *Sierra v. INS*, 258 F.3d 1213, 1217 (10th Cir. 2001), *cert. denied* 534 U.S. 1071, 151 L. Ed. 2d 589, 122 S. Ct. 676 (2001) (finding § 1252(a)(2)(B)(ii) did not strip courts of habeas review of parole revocation decisions because (1) "in the immigration context 'jurisdiction to review' has a meaning distinct from 'habeas corpus,' and a statute stripping courts of the former does not also deprive them of the ability to hear a habeas challenge" *citing INS v. St. Cyr, supra*; (2) the petitioner challenged the constitutionality of the procedures used in his parole

proceeding). "It is never within the Attorney General's discretion to act unconstitutionally." *Id.* citing *Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1291 (10th Cir. 2001) (holding that statutes restricting judicial review of discretionary decisions do not preclude review of challenges to the constitutionality of INS regulations). Employing the same analysis as it applied to § 1252(a)(2)(B)(ii), the Tenth Circuit found that § 1226(e) does not deprive a court of *habeas* jurisdiction to review a parole revocation procedure. *See also Jeanty v. Bulger*, 204 F. Supp. 2d 1366, 1374 (S.D. Fla. 2002).

Regardless, the respondents contend that "Congress has now unequivocally eliminated *habeas corpus* review of all discretionary decisions...relating to immigration matters". (See Motion to Dismiss p 9). In doing so, they rely upon the REAL ID Act[1]

However, § 106 of the REAL ID relates, as its title clearly states to "Judicial Review of Orders of Removal". Section 106(a) of the REAL ID clearly states that it amends § 242 of the INA, *i.e.*, 8 U.S.C. § 1252. By this clear and unambiguous statement its amendments do not reach § 1226(e). *See Kim, supra*. Further, § 106(b) of the REAL ID states that the amendments made by Section 106(a), as cited in the respondents' memorandum, "shall apply to cases in which the *final administrative order of removal*, deportation, or exclusion was issued before, on, or after the date of enactment of this provision." (Emphasis added). Additionally, § 106(c) of the REAL ID specifically mandates the transfer of a § 2241 *habeas corpus* case "challenging a final administrative order of removal, deportation, or exclusion" to the appropriate circuit court of appeals at which a "petition for review could have been properly filed under section 242(b)(2)", 8 U.S.C. 1252. Section 106(c) also mandates the said transfer of just "the part of the [§

---

[1] Div. B, Emergency Supplemental Appropriations Act for Defense, the Global War on Terror, and Tsunami Relief, 2005, Act of May 11, 2005, Pub. L. No. 109-13, 119 Stat. 231.

2241] case that challenges the order of removal, deportation, or exclusion" to the appropriate court of appeals.

As a result, § 2241 *habeas corpus* cases, or the parts thereof, dealing with issues of detention are to remain in the district courts as has been the traditional practice. This result is the clear intention of Congress as articulated in the REAL ID amendments to the INA. Further, this intention is confirmed in the Conference Report on H.R. 1268 -- (House of Representatives - May 03, 2005) found in the Congressional Record of May 3, 2005 at page H2873 wherein it states:

> Significantly, this section does not eliminate judicial review, but simply restores such review to its former settled forum prior to 1996. Under Section 106, all *aliens who are ordered removed* by an immigration judge will be able to appeal to the BIA and then raise constitutional and legal challenges in the courts of appeals. (Emphasis added)...
>
> Moreover, section 106 would not preclude *habeas* review challenges to detention that are independent of challenges to removal orders. Instead, the bill would eliminate *habeas* review only over challenges to removal orders."

151 Cong. Rec. H 2873.

The respondents also look to § 101(f)(2) of the REAL ID to support their position that this court lacks *habeas* jurisdiction over this petition. In particular, they cite the language "regardless of whether the judgment, decision, or action is made in removal proceedings". This language amends § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B) which is entitled "Denials of discretionary relief". This amendment does not advance the respondents' argument. The amendment does nothing more than recognize that there are contexts beyond "removal proceedings" within which the delineated requests for discretionary relief may be granted. These include, as expressly stated in Section 106(c)

of REAL ID, "deportation or exclusion" proceedings. It is important to note that deportation and exclusion cases remain on Immigration Court dockets, despite these proceedings having been repealed and incorporated into removal proceedings in 1996 by IIRAIRA.[2] Further, many of the discretionary reliefs listed in § 1252(a)(2)(B) can be affirmatively sought by an alien by way of application to the appropriate Director of the DHS without the alien having been placed in any proceeding which seeks the forced departure of the alien from the United States. These include the discretionary reliefs of § 212(h), 8 U.S.C. § 1182(h) waiver of inadmissibility, § 212(i), 8 U.S.C. § 1182(i) waiver of inadmissibility, § 240(B), 8 U.S.C. § 1229c voluntary departure, and § 245, 8 U.S.C. § 1255 adjustment of status; all of which are specifically cited in § 1252(a)(2)(B)(i). Additionally, an alien may affirmatively seek asylum in the United States pursuant § 208a of the INA, 8 U.S.C. § 1158 without having been placed any sort of proceeding which seeks the removal of the alien.[3]

Nothing in REAL ID states or suggests that habeas jurisdiction over matters of detention, including that resulting from a parole revocation, is eliminated by its amendments. Nowhere in the body of the amendments is detention or parole mentioned. Both *St. Cyr and Kim* require specificity to eliminate *habeas corpus* jurisdiction over these matters.

In *Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir. 2003) the First Circuit recognized:

---

[2] *See* § 304 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA) (enacted as Division C of the Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, 110 Stat. 3009).

[3] Section 1252(a)(2)(B)(ii) specifically exempts "the granting of relief under section 208a" from any bar to judicial review.

...generally that "pure issues of law" may be raised in habeas. *Goncalves*, 144 F.3d at 113; *see also Ruckbi v. INS*, 285 F.3d 120, 124 n.6 (1st Cir. 2002); *Carranza*, 277 F.3d at 72. The entire content of that phrase has not been worked out. In *St. Cyr*, the Supreme Court referred to the use of habeas to correct "errors of law, including the erroneous application . . . of statutes." 533 U.S. at 302. In *Demore*, the Court upheld the use of habeas to challenge on constitutional grounds "the statutory framework" permitting detention without bail. 2003 U.S. LEXIS 3428, 2003 WL 1960607, at *5. The Second Circuit in Wang has suggested that habeas jurisdiction encompasses at least the situation in which what is at stake is the BIA's application of legal principles to undisputed facts. 320 F.3d at 143.

...

[Further,] [t]he scope of habeas review is not the same as the scope of statutory judicial review in the courts of appeal. *Heikkila*, 345 U.S. at 236. At a minimum, habeas review encompasses constitutional claims that are at least colorable. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268, 98 L. Ed. 681, 74 S. Ct. 499 (1954). This includes an assessment of whether a particular set of facts amounts to a constitutional violation. E.g., *Zadvydas*, 533 U.S. at 699. Habeas also encompasses colorable claims that an alien's statutory rights have been violated. Id. at 688; *Carranza v. INS*, 277 F.3d 65, 71. Included in this category are issues of the proper construction of a statute, which is an issue of law. *Goncalves*, 144 F.3d at 124- 25. As a result, if a statute makes an alien eligible to be considered for a certain form of relief, he may raise on habeas the refusal of the agency to even consider him. But he may not challenge the agency's decision to exercise or not exercise its discretion to grant relief. *Carranza*, 277 F.3d at 71 (*citing Goncalves*, 144 F.3d at 125).

The petition makes numerous claims recognized by *Saint Fort* to be within the *habeas corpus* jurisdiction of this Court.

### III. Claims Upon Which Relief Can Be Granted

### A. Misapplication of law, Due Process Violation

The petitioner is entitled to have the law applied to him correctly. It is submitted that the revocation of the petitioner's parole involves a misapplication of law and as such is reviewable by this Court.

The respondents in their motion cite the petitioner's claim of a "credible fear" of persecution to discount the petitioner's demand to be released. The essence of the respondents' claim appears to be that the petitioner is ineligible for consideration for parole because he was ordered removed by the IJ and thus, he does not have a "significant possibility 'that the alien could establish eligibility for asylum'" (Respondents' Motion pp 11-12, quoting 8 U.S.C. 1225(b)(1)(B)(v)). That argument ignores recent developments in asylum law. It is submitted that the Field Director employed the same error when he revoked the petitioner's parole.

At the February 10, 2005 hearing, the IJ asked for briefs on the issue of a bar to asylum. The petitioner's brief took the position that asylum was not barred since the petitioner had not acted voluntarily engaged in any persecutorial acts. The DHS took the position that volition was not required before a bar to asylum would rise. Prior to the submission of briefs, the DHS revoked the petitioner's parole.

It is submitted that at the time that the Field Director revoked the petitioner's parole, he relied upon an erroneous interpretation of eligibility for asylum and thus for parole. The law, as it has evolved, requires that an individual engage in persecutorial acts voluntarily before he can be barred from asylum. The alien's "behavior [must be]...culpable to such a degree that he could be fairly deemed to have assisted or participated in persecution." *Hernandez v. Reno*, 258 F.3d 806, 813 (8th Cir. 2001) (citation omitted). In *Vukmirovic v. Ashcroft*, 362 F.3d 1247 (9th Cir. 2004) the Ninth Circuit said:

> [T]he language, ordered, incited, assisted or otherwise participated in the persecution of any person, requires that the act of participation involve some personal activity involving persecution... Mere acquiescence or membership in an organization is insufficient to

11

> trigger the [bar]...Active personal involvement in persecutorial acts needs to be demonstrated before [the bar]...may be established. *Id.*, at 1252, *citing Laipenieks v. INS*, 750 F.2d 1427, 1429 (9th Cir. 1985)(internal quotation marks and internal citations omitted).

The court went on to note that the need to preserve one's life may avoid triggering the bar. ("the BIA has ... quite appropriately referred to 'self-defense and self-preservation' as some 'of the most elemental characteristics of the human species.'" *Id.*, quoting *Matter of E*, 2 I. & N. Dec. 134, 165 (BIA 1944)). The recognized authoritative treatise on immigration law in the United States analyzes the state of the law as follows:

> ..."[I]ndividual accountability" in the persecution of others must be established before asylum may be denied. Consequently, persecution of others may not be imputed to the petitioner based on the acts of others or acquiescence, but rather must be based on affirmative, individual actions. ***The actions constituting persecution must be volitional***, and thus acts perpetrated... [without such volition] may not establish persecution of others. (emphasis added)(footnotes and citations omitted). Charles Gordon, Stanley Mailman, & Stephen Yale-Loehr, Immigration Law and Procedure, at Chapter 33 Sec. 33.04[1][b][iii] (Matthew Bender, Release No. 107, 2004).

The hearing in this matter continued after the petitioner's parole was revoked. In her decision, the IJ found the petitioner credible in his testimony that he feared that he would be killed if he did not participate, to whatever extent that he did, in the Mungiki activities. She also found him credible concerning his fear of retribution/persecution from the Mungikis in the future. However, the IJ refused to find that volition was required in order to make an alien ineligible for asylum. The IJ did, however, make a particular effort in her opinion to point out that the question of volition as it relates to bars to asylum was a very important one, and one ripe for review and guidance from higher courts.

12

It is submitted that at the time that the Field Director revoked the petitioner's parole, his interpretation and application of the law of asylum, and thus the petitioner's eligibility for continued parole, was erroneous to the extent that the petitioner was, in effect, denied even consideration for continuation of parole. As a result, the Field Director did not in any way exercise his discretion. *See Bertrand v. Sava*, 684 F.2d 204 (2d Cir. 1982). Rather, he acted as if the petitioner were no longer eligible for parole. It is submitted that this misapplication of the law resulted in a denial of due process to the petitioner. The Field Director's misapplication of the law is not cured by the IJ decision in the case.

This misapplication of the law is reviewable by this Court in *habeas corpus*.

### B. Failure to Follow Regulations and Procedures, Due Process Violation

But for the misapplication of the law, nothing has changed in the petitioner's circumstances, nor are any alleged, that would change the petitioner's eligibility for continued parole.

The government's discretion to detain arriving aliens, even those whose parole has been revoked is not unlimited. The Supreme Court has held that parolees with removal orders must be treated the same as aliens admitted to the United States for purposes of indefinite detention. *See Clark v. Martinez*, __ U.S. __, 125 S.Ct. 716, 160 L.Ed. 2d 734 (2005). Further, the First Circuit has recognized that revocation of an alien's previously granted parole may be subject to a higher level of scrutiny than is the refusal of parole to those who have never had it. *See Amanullah v. Nelson*, 811 F.2d 1, 11 n. 6 (1st Cir. 1987) (citing *Moret v. Karn*, 746 F.2d 989 (3d Cir. 1984) abuse of discretion standard applied, instead of "facially legitimate reason", where the INS failed to follow its own regulations

and procedures (for termination of parole of Mariel Cubans) and dealt not with the grant of parole, but with revocation of a parole previously granted).

As alleged in the petition, the petitioner satisfied all criteria for parole and was released in that status. 8 C.F.R 212.5(e)(2) states "...upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole." The requirement of a written notice applies to the petitioner. This section is to be contrasted with 8 C.F.R 212.5(e)(1) which allows for automatic revocation of parole without written notice.

As alleged in the petition, the DHS issued a "notice" that simply states "You are hereby notified that Immigration and Customs Enforcement (ICE) has revoked your Humanitarian Parole status." (See Attachment to Petition) The "notice" provides no reason for the revocation despite 8 C.F.R 212.5(e)(2)'s listing of reasons that trigger the requirement of a written notice. It is submitted that 8 C.F.R 212.5(e)(2) requires that the reasons for the termination be stated in the notice. Otherwise, the distinction between cases requiring written notice and those that do not would be completely meaningless. It is further submitted that 8 C.F.R 212.5(e)(2) lists reasons for "on notice" termination of parole with an eye towards judicial and/or *habeas corpus* review, *i.e.*, providing a basis for a reviewing court to determine whether parole was properly terminated. This point is extremely important in this case since, on its facts, it appears that DHS treated the

petitioner as one who was no longer eligible for parole as opposed to one whose parole was being terminated on a discretionary basis.

It is generally recognized that "whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Sierra v. INS, supra, quoting United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544, 94 L. Ed. 317, 70 S. Ct. 309 (1950). "[T]he decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." *Amanullah v. Nelson, supra,* at 8, *citing Jean v. Nelson*, 727 F.2d at 968, *quoting Nishimura Ekiu v. United States*, 142 U.S. 651, 660, 35 L. Ed. 1146, 12 S. Ct. 336 (1892).

However, in the petitioner's case the DHS has not followed the procedures that were authorized by Congress, as articulated through DHS's own regulations. Thus, the petitioner has been denied his due process. The failure to follow it own procedures and regulations, and/or the denial of due process is reviewable by this Court in *habeas corpus* proceedings. *See Moret v. Karn, supra; Bertrand v. Sava, supra* (using abuse of discretion analysis).

Clearly, on the facts of this case, the Field Director's actions in revoking the petitioner's parole cannot withstand even the minimum standard of review. Here, the Field Director has not "advanced a facially legitimate and bona fide reason for withholding parole." *Amanullah v. Nelson, supra,* at 8 11. His actions have been arbitrary and capricious. They cannot hold up under any standard of review.

Conclusion

This Court has *habeas corpus* jurisdiction over the issues presented in the petition. The Court should resolve the issues of law in the petitioner's favor, find that the

revocation of parole was based upon an erroneous interpretation and application of law; a failure to follow regulations and procedures; and/or a denial of due process. The Court should deny the respondents' Motion to Dismiss.

Dated: August 19, 2005

Respectfully submitted,

Chester J. Winkowski, Esq.
Attorney at Law
191 Merrimack Street - Suite 502
Haverhill, MA  01830
978 374 1680
BBO# 530685

### Certificate of Service

I hereby certify that I have on this date served a copy of the above document upon Frank Crowley, Esq., Special Assistant U.S. Attorney, Department of Homeland Security, P.O. Box 8728, JFK Station, Boston, MA 02114 by first class post prepaid.

Dated: August 19, 2005

Chester J. Winkowski